Enoch ADAMS, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, David Swan, and Joseph Swan, Plaintiffs,

v.

TECK COMINCO ALASKA, INC., Defendant.

Nana Regional Corporation and Northwest Arctic Borough, Intervenors–Defendants.

No. A04–49 CV (JWS).

United States District Court, D. Alaska.

Nov. 3, 2005.

---

**ORDER FROM CHAMBERS**

SEDWICK, District Judge.

### *I. MOTION PRESENTED*

At docket 86, plaintiffs Enoch Adams, Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan move to compel production of documents requested in plaintiffs' request for supplemental disclosures. At docket 87, defendant Teck Cominco Alaska, Inc. ("Teck") opposes the motion. Plaintiffs' reply is filed at docket 90. No party requested oral argument, and it would not assist the court.

### *II. BACKGROUND*

On March 3, 2005, plaintiffs deposed Mark Thompson, Teck's Senior Environmental Coordinator. Thompson testified in pertinent part:

Q. Do you talk about compliance with [Mike Fillion of Teck Cominco Limited] on an ongoing basis, like last month we had two exceedances or we had to send EPA two letters of possible exceedances?

A. No. We produce monthly and quarterly reports...that would have that in that go to corporate, but [ ] I'm not even sure who those go to.

Q. Who produces those reports?

A. Each department on site produces their own section.

Q. And they're put together into a single report?

A. Yes.

Q. Who puts them into the report?

A. Generally the administrative secretary.

Q. So it's—describe what a monthly report looks like.

A. We get—on a monthly report, we get about a half a page, lists spills, noncompliances, significant events. We save it, save it on the network, and then the administrative secretary goes and fetches it and cuts it and pastes it into her main document. Roughly a half a page to a page.

Q. How long is the typical monthly report?

A. I'm not sure.

. . . .

Q. Okay. When you say the monthly and quarterly reports go to corporate, what are you referring to.

A. They go—they're delivered to somebody in the corporate office in Vancouver.

Q. Who—how do they get there?

A. I'm not that familiar with how these monthly reports go or even really what's contained in them. I just know that we're asked to put them together. I don't know who they go to, who reviews them or anything.[1]

On March 7, 2005, plaintiffs filed Request for Supplemental Disclosure No. 7a, which states:

Please produce the following documents referred to during the Deposition of Mark Thompson, conducted March 3, 2005...All monthly and quarterly reports prepared by Teck Cominco Alaska Incorporated staff "for corporate" that detail spills, non-compliance or "significant events" from 1998 to the present; this does not include Discharge Monitoring Reports or notices of exceedances sent to APA. Mr. Thompson testified that these reports are prepared "for corporate" and are generally less than one page per month.[2]

On May 6, 2005, Teck filed its response to the above request, stating "[d]ocuments responsive to this request are available for inspection and copying."[3] On June 27, 2005, Teck filed an amended response to plaintiffs' request for supplemental disclosure, stating:

Teck Cominco Alaska previously indicated that documents responsive to Request for Supplemental Disclosure 7a were available for inspection and copying. Since the time of that response, Teck Cominco Alaska has determined that all responsive documents

are privileged. Consequently, Teck Cominco objects to production on the basis that the request seeks documents protected from disclosure by the attorney client privilege. Teck Cominco Alaska further objects that the request seeks documents protected from disclosure by critical self analysis privilege. Teck Cominco Alaska further objects that the request seeks documents protected from disclosure by the work product doctrine.[4]

Defendant attached a privilege log to the amended response, which includes the following pertinent entries: Teck Cominco Monthly Compliance Reports from January 2003 through March 2005, Red Dog Mine 2002 Operating Monthly Reports, Red Dog Mine Property Summary/Overview for January through December 1998–2001, Red Dog Mine Quarterly Environmental Reports for First Quarter 1998, and Red Dog Mine Quarterly Environmental Reports for Second Quarter 2002 through First Quarter 2005.[5]

Plaintiffs' counsel subsequently attempted to obtain the requested documents from defendant's counsel without success. By letter dated July 18, 2005, defendant's counsel informed plaintiffs' counsel that the requested documents are privileged and would not be produced.[6] Plaintiffs now move to compel "the production of documents created by [Teck] that summarize its non-compliance with its federal Clean Water Act permits."[7] Defendant opposes the motion.

### III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Plaintiffs move to compel production of "documents created by [Teck] that summarize its noncompliance with its federal Clean Water Act permits"[8] on the grounds that the documents are relevant and are not privi-

1. Thompson Deposition at 1–4, exh. 178, doc. 86.

2. Responses to Supplemental Requests at 2, exh. 179, doc. 86.

3. Id.

4. Amended Responses at 2–3, exh. 180, doc. 86.

5. Id. at 4–5.

6. Doc. 86, exh. 181.

7. Motion at 1, doc. 86.

8. Id.

leged. Defendant opposes the motion on the grounds that the documents are protected by the attorney client privilege, the work-product doctrine, and by the critical self-analysis privilege.

The court considers each of defendant's alleged defenses to production in turn.

*Attorney–Client Privilege*

Defendant alleges that the requested "documents are prepared by Teck Cominco for Teck Cominco's general counsel in order to enable him to provide legal advice to Teck Cominco with respect to all issues of risk management facing the company."[9] As evidence, defendant relies solely on the declaration of James Kulas, Superintendent of the Environmental Department of Teck's Red Dog Mine. Kulas testifies that the reports Thompson prepares are sections of a larger report that is "forwarded to a member of the risk management committee" and "then combined with similar information prepared by persons in other operations." Kulas further testifies:

> The final compiled document is then forwarded to Mr. Manuel so as to enable him to provide sound legal advice to his clients. The reports address every legal issue faced by the company, including the above captioned litigation and all other litigation matters, and are kept in the strictest of confidence. The reports candidly and critically evaluate every aspect of company operations, so as to facilitate risk management, and their purpose would be frustrated if confidentiality could not be maintained.[10]

■ The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."[11] "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." The Ninth Circuit has set out the following essential elements of the attorney-client privilege:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.[12]

"The burden is on the party asserting the privilege to establish all the elements of the privilege."[13]

■ In this case, the attorney-client privilege does not apply for several reasons. First, to assert the privilege defendant must show that Thompson had an attorney-client relationship with Len Manuel. The evidence on record shows that Manuel serves as General Counsel to Teck Cominco Limited, and that he does not serve as counsel to Teck Cominco Alaska, Inc.[14]

Second, even if Manuel were defendant's attorney, defendant has failed to show that the requested documents constitute communications between a client and a lawyer for the purpose of obtaining legal advice. The evidence shows that Thompson prepares reports that detail spills, non-compliance or "significant events," which are combined with sections produced by other departments into a larger report that is forwarded to a risk management committee, combined with information prepared by persons in other operations, and then forwarded to "corporate," or more specifically Teck Cominco Limited's general counsel. Defendant has made no showing that Teck prepares its reports for the purpose of obtaining legal advice. To the contrary, the evidence shows that Thompson compiles the Teck reports at issue but does not know to whom the reports are sent or who reviews the Teck reports.[15]

---

9. Opposition at 2, doc. 87.

10. Kulas Declaration at 2, doc. 89.

11. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

12. *United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002) (citing Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961)).

13. *Id.* at 1000.

14. Cole's Supplemental Declaration at 1, doc. 90.

15. Thompson Deposition at 3–4, exh. 178, doc. 86.

In addition, the titles of Teck's reports[16] suggest that the documents constitute records kept in the general course of business. Mere transfer of pre-existing reports to an attorney does not invoke the protections of the attorney-client privilege. The Supreme Court and the lower courts have "uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."[17]

Finally, defendant has failed to establish that the disclosures were made in confidence. Rather, the record reflects that the reports at issue are saved to the network, "cut and pasted" by the administrative secretary, reviewed by a risk management committee, combined with information prepared by persons in other operations, and then a combined report is forwarded to general counsel for Teck Cominco Limited.

For the reasons stated above, the attorney-client privilege does not apply to the documents at issue.

*Work–Product Immunity*

Relying on the Kulas declaration, defendant next alleges that the reports at issue are protected by the work-product doctrine because they "were prepared by [Teck] for its attorney in order to facilitate the rendering of legal advice in connection with every litigation matter and other legal issue with which the company is faced."[18]

■ "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."[19] Federal Rule of Civil Procedure 26(b)(3), which codifies the work-product doctrine, states in pertinent part:

> [A] party may obtain discovery of documents and tangible things...prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

The primary purpose of the work-product rule is "to prevent exploitation of a party's efforts in preparing for litigation."[20] "Although the rule affords special protection for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship."[21]

■ The work-product doctrine does not apply to the documents at issue here. As discussed above, defendant has failed to make a showing that defendant prepared the documents in anticipation of litigation or for trial. In addition, Rule 26(b)(3) "on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought."[22] Here, the evidence shows that the requested documents were provided to "a member of the risk management committee," who in turn forwarded the documents to Teck Cominco Limited's general counsel. Rule 26(b)(3) does

---

**16.** Teck Cominco Monthly Compliance Reports from January 2003 through March 2005, Red Dog Mine 2002 Operating Monthly Reports, Red Dog Mine Property Summary/Overview for January through December 1998–2001, Red Dog Mine Quarterly Environmental Reports for First Quarter 1998, and Red Dog Mine Quarterly Environmental Reports for Second Quarter 2002 through First Quarter 2005.

**17.** *Fisher,* 425 U.S. at 403–04, 96 S.Ct. 1569.

**18.** Opposition at 3, doc. 87.

**19.** *Admiral Insurance Co. v. U.S. District Court for the District of Arizona,* 881 F.2d 1486, 1494 (9th Cir.1989) (citing FED. R. CIV. P. 26(b)(3)).

**20.** *Id.*

**21.** *Id.*

**22.** *In re California Public Utilities Com'n,* 892 F.2d 778, 781 (9th Cir.1989).

not protect documents prepared by a party for a non-party's attorney.

Moreover, even if the documents at issue were protected by the work-product doctrine, plaintiffs have made a sufficient showing under Rule 26(b)(3) showing that the requested documents "are essential to the preparation and prosecution of [plaintiffs'] case, and are not available from any other source."[23] The requested reports allegedly contain Teck's "own compilation of its permit violations." Plaintiffs aver that these "internal documents in which [Teck] presumably truthfully reports its own violations" are critical to plaintiffs because the internal documents may contradict Teck's litigation posture or its discharge monitoring reports to the EPA.[24]

*Critical Self–Analysis Privilege*

Finally, citing *Dowling v. American Hawaii Cruises,* defendant argues that the documents at issue are protected by the critical self-analysis privilege.[25] In *Dowling,* however, the Ninth Circuit states that "[t]his circuit has not yet considered whether there exists a so-called privilege of self-critical analysis."[26] In a more recent case where a party invoked the critical self-analysis privilege, the court explicitly stated that the Ninth Circuit "has not recognized this novel privilege."[27] Defendant has not cited any controlling authority applying the critical self-analysis privilege. This court declines to recognize that "so-called privilege" here.

## IV.   CONCLUSION

For the reasons set out above, plaintiffs' motion to compel production at docket 86 is **GRANTED**. Defendant is ordered to produce the documents requested in plaintiffs' Request for Supplemental Disclosure No. 7a on or before **November 21, 2005**.

---

**23.**   Reply at 7, doc. 90.

**24.**   *Id.*

**25.**   971 F.2d 423 (9th Cir.1992).

**26.**   *Id.* at 425.

---

**27.**   *Union Pacific R. Co. v. Mower,* 219 F.3d 1069, 1076 n. 7 (9th Cir.2000) (citing *Dowling,* 971 F.2d at 425–26).